IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MICHELLE R.,**[1]

    **Plaintiff,**

v.

    Civil Action 2:22-cv-2410
    Judge Sarah D. Morrison
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Michelle R., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 9). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

I. **BACKGROUND**

Plaintiff protectively filed her application for benefits on July 18, 2018, alleging that she has been disabled since May 5, 2014, due to arthritis, Bi-Polar Depression, tremors, and sleep apnea. (R. at 150-56, 180.)  Plaintiff's application was denied initially in May 2019 and upon reconsideration in August 2019.  (R. at 51-72, 75-82.)  Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ").  (R. at 83-99.)  ALJ Timothy G. Keller held a telephone hearing on April 8, 2021, at which Plaintiff, who was represented by counsel, appeared and testified.[2]  (R. at 28-39.)  A vocational expert ("VE") also appeared and testified.  (*Id.*)  On April 19, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 14-27.)   On April 14, 2022, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-8.)  Plaintiff subsequently filed her Complaint with this Court. (ECF No. 1.)

II. **RELEVANT RECORD EVIDENCE**

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to her conditions and resulting limitations.  Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

---

[2] Plaintiff's first disability hearing was held on October 15, 2020, but was continued to allow Plaintiff the opportunity to obtain prior medical records. (R. at 40-50.)

### III. ADMINISTRATIVE DECISION

On April 19, 2021, the ALJ issued his decision. (R. at 14-27.) The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2016. (R. at 19.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of May 5, 2014 through her date last insured of March 31, 2016. (R. at 20.) The ALJ found that, through the date last insured, Plaintiff had the following medically determinable impairments: tremors, rheumatoid arthritis, gastroesophageal reflux disease, carpel tunnel syndrome, obesity. (*Id.*) The ALJ further found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, [Plaintiff] did not have a severe impairment or combination of impairments. (*Id.*)

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from May 5, 2014, the alleged onset date, through March 31, 2016, the date last insured. (R. at 22.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices;' on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V.  **ANALYSIS**

Plaintiff raises one contention of error in a fairly broad fashion: the ALJ erred by failing to find any severe impairments and ending his inquiry at step two of the sequential evaluation process. (ECF No. 13 at 9.) For the following reasons, the Undersigned finds that the ALJ's conclusion at step two is supported by substantial evidence.

At the outset, it is important to confirm both the relevant time period at issue and the precise nature of Plaintiff's claim here. As for the period at issue, there is no dispute that, as the ALJ concluded, Plaintiff last met insured status on March 31, 2016. (R. at 19.) Further, although the ALJ considered Plaintiff's alleged onset date to be May 5, 2014, at the oral hearing on April 8, 2021, Plaintiff agreed to amend her onset date to September 30, 2015, a date counsel explained was consistent with her first visit to the rheumatologist. (R. at 31.) Also, there is no question that, because Plaintiff did not file her application until July 18, 2018, this case involves a remote date last insured. (R. at 17, 21.)

Regardless of whether May 5, 2014 or September 30, 2015 is considered the alleged onset date, the record contains only two sets of medical records relevant to the time period prior to Plaintiff's date last insured – progress notes from Plaintiff's primary care provider, Ann Sage, DO set forth at pages 253-299 of the record and office treatment records from Plaintiff's

rheumatologist, Ritu Madan, DO set forth at pages 740-765. Instead, the bulk of the medical evidence in the record is much more recent in time and includes Dr. Madan's assessment dated July 23, 2020 (R. at 697-702) and her additional statement dated March 29, 2021 (R. at 850). Also included in the record is a treating source statement from Dr. Sage dated September 29, 2020, in which she states that she defers to Dr. Madan's assessment. (R. at 733.) This more recent evidence is relevant only to the extent "it illuminates [a] condition before the expiration of insured status." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020).

Turning to the issue of the precise nature of Plaintiff's claim here, as set forth above, the ALJ found that Plaintiff has the medically determinable impairments of tremors, rheumatoid arthritis, gastroesophageal reflux disease, carpal tunnel syndrome, and obesity. (R. at 20.)[4] The ALJ then concluded that none of these impairments, alone or in combination, were severe within the meaning of the Act during the relevant time period. (*Id.*). As also noted above, Plaintiff argues broadly that the ALJ erred by not finding any of these impairments to be severe. Her manner of argument and presentation, however, make it difficult to discern with specificity which impairment or impairments Plaintiff believes the ALJ should have found to be severe. At

---

[4] The ALJ also specifically found that Plaintiff's mental health allegations revealed little if any treatment and thus found that the alleged conditions of depression and bipolar disorder were non-medically determinable impairments. (R. at 21.) Plaintiff is not challenging this determination. Similarly, despite various mentions of fibromyalgia in her brief (*see* ECF No. 13 at 11, 12, 13) and the ALJ's reference in his decision to the mention of that condition in the hearing transcript (R. at 21 citing, *e.g.,* R. at 31), Plaintiff is not challenging the ALJ's failure to conclude that that condition was a medically determinable impairment. Thus, Plaintiff has forfeited any challenge to the ALJ's decision regarding these issues. *See Bolton v. Comm'r of Soc. Sec.,* 730 F. App'x 334, 338 (6th Cir. 2018) (citing *Burton v. Comm'r of Soc. Sec.*, 702 Fed.Appx. 436, 437 n.1 (6th Cir. 2017)).

best, it appears that Plaintiff is contending that the ALJ should have found her rheumatoid arthritis to be a severe impairment.   The Undersigned disagrees.

At Step Two of the sequential evaluation process, the ALJ must determine whether a claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii).  "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act. . . ." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007).

The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520(c).  Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *See id.*

As Plaintiff correctly notes, the Sixth Circuit has "characterized step two of the disability determination process as a '*de minimis* hurdle.'"  *Despins*, 257 F. App'x at 929. The inquiry at Step Two functions as an "administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)).

Thus, an impairment can be considered not severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* at 862. Applying this standard, the question is "whether there is substantial evidence in the record supporting the ALJ's finding that Plaintiff has only a 'slight' impairment that does not affect her ability to work." *Farris*, 773 F.2d at 90.

> The ALJ summarized the relevant medical records as follows:
>
> ***[T]he record indicates a diagnosis of rheumatoid arthritis that has caused swelling and pain in her joints, primarily in her bilateral hands, wrists, ankles, knees, and feet. (Exs. 16F-15, 23). X-rays showed no new evidence to suggest progression of erosive arthropathy in the hands, wrists, ankles or feet. There was only mild, non-severe, findings throughout. (Exs. 7F-28, 2F-71-74). Examinations performed by Dr. Ann Sage, DO, in 2015 revealed normal range of motion and no edema. She had normal heart sounds, no wheezing, rales, and normal reflexes throughout. (Exs. 1F, 5F). As a result, [Plaintiff]'s physical impairments are non-severe. In reaching the conclusion that these impairments do not significantly limit [Plaintiff]'s ability to perform basic work activities, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.
>
> …
>
> This case involves remote date last insured. [Plaintiff] had only very minor and inconsistent complaints such as morning/AM stiffness (one hour in the AM); however, she had no AM stiffness in the record and none as recently as February 2021. (Ex. 19F-36, 23F-4). Moreover, her pain was reported as 0 out of 10 at Exhibit 19F-30, with no aches, pains, or joint swelling. Her hands were reportedly stiff in the morning, but that does not rise to the level of a severe impairment(s).***

(R. at 21.)

Plaintiff argues that her rheumatoid arthritis has resulted in a marked restriction of activities of daily living as summarized by Dr. Madan in the assessment Dr. Madan completed on December 4, 2020. (ECF No. 13 at 11 citing R. at 781-787.) Specifically,

Plaintiff cites Dr. Madan's opinion that Plaintiff's pain was severe enough to interfere with attention and concentration, that fatigue was noted as a side effect of her medication, and that Plaintiff had significant limitations in her ability to sit and stand/walk. Plaintiff also highlights Dr. Madan's indication that the restrictions noted on the assessment dated December 4, 2020, existed as of September 30, 2015, and asserts that they continued to exist through the completion of Dr. Madan's statement on March 29, 2021. (*Id*. at 12.) According to Plaintiff, Dr. Madan's assessment is consistent with the clinical findings on examination of Plaintiff on September 30, 2015, including swelling in Plaintiff's hands and wrists, bilateral thumb deformities, mild decreased range of motion in her bilateral shoulders, and knee crepitus. (*Id*. citing R. at 779.) Aside from Dr. Madan's assessment, Plaintiff cites to her testimony regarding pain and fatigue and instances of complaints of worsening tremors in her hands.

> The ALJ, however, had this to say about Dr. Madan's assessment:
>
> As for the opinion evidence, Ann Sage, DO, deferred to Dr. Madan's assessment, finding that the claimant's fatigue was a severe impairment, which would result in pain severe enough to interfere with attention and concentration on a frequent basis. (Exs. 15F, 17F, 20F, 24F). These opinions are unpersuasive, as they are inconsistent with the medical evidence of record, showing 0 out of 10 pain, no aches, pains or joint swelling. (Ex. 19F-30). The overall evidence does not support these limitations. The record as a whole shows that the claimant's impairments are nonsevere. Consequently, the opinions of Dr. Madan are unpersuasive.

(R. at 21.)

In finding Dr. Madan's opinion to be unpersuasive because it was not consistent with nor supported by the medical evidence of record, the ALJ considered treatment records from Dr. Madan and from Dr. Sage. With respect to Dr. Madan's records, those dated March 4, 2016, *i.e.,*

9

during the relevant time period, indicate Plaintiff's lack of pain as noted by the ALJ. (R. at 21 citing R. at 769.) Those same records also indicate that, although Plaintiff reported AM stiffness lasting one hour, Plaintiff denied any aches or pains or joint swelling and denied having a major flareup. (R. at 769.) Indeed, in the assessment portion of her notes, Dr. Matan stated that Plaintiff's Enbrel was stopped as of the date because Plaintiff's RAPID3 score indicated "near remission on 3/4/16." (R. at 770.)

Reading the ALJ's opinion as a whole, the ALJ also considered medical evidence from Dr. Madan dated after the date last insured in concluding that Plaintiff did not have a severe impairment. (R. at 21 citing R. at 717, 725.) As the ALJ noted, some of this evidence, including progress notes dated July 14, 2020 and July 23, 2020 indicated wrist, knee and hand swelling. *Id*. The ALJ also cited an X-ray report dated April 17, 2017, indicating that "the hands and wrist demonstrates no significant joint space narrowing. There is a solitary very early erosion suggested of the styloid process of the distal LEFT ulna." (R. at 21 citing R. at 371.) With respect to Plaintiff's feet, that same report stated that "[t]here is very early joint space narrowing associated with erosive changes most prominently involving the RIGTH 5th MTP joint. Milder involvement is noted of the LEFT and RIGHT 1st MTP joints. Findings do suggest an erosive arthritis." (*Id*.) However, the ALJ also cited a later imaging report dated June 3, 2019 indicating that there was "[n]o new radiographic evidence to suggest progression of erosive arthropathy in the hands, wrists, ankles or feet." (R. at 21 citing R. at 577.)

Additional treatment records from Dr. Madan indicate that on March 28, 2018, Plaintiff was doing well on her medication regimen and was near remission with a reported pain level of

10

0. (R. at 329.) Dr. Madan offered similar assessments on November 30, 2017 (R. at 337); March 4, 2019 (R. at 307); and October 9, 2018. (R. at 315) Other records from Dr. Madan also indicate that Plaintiff had had an emergency flareup in April 2017 because she had been off her medication since September 2016. (R. at 364, 368-369). Dr. Madan reported that Plaintiff had sought treatment in April 2017 because she was preparing for a trip to Disney World with her daughter. (R. at 368-369.) On June 3, 2019, Dr. Madan reported that Plaintiff was doing well with her current medication regimen. (R. at 519, 524)).

Elsewhere in his discussion, the ALJ cited to treatment records from Dr. Ann Sage, Plaintiff's primary care physician, noting that these records revealed "only mild, non-severe, findings throughout." (R. at 21 citing R. at 253-299 and 432-510.) Notably, Dr. Sage's records appear to cover either the time period prior to her alleged onset date as amended (R. at 253-299) or the time period after her date last insured (R. at 432-510; 593-611; 663-696; 734-739; 788-822; and 844-849). As to the earlier period, Dr. Sage's treatment notes indicate a diagnosis of rheumatoid arthritis as of August 20, 2010, but consistently document normal range of motion and no edema as of September 10, 2014 (R. at 255, 258); October 22, 2014 (R. at 268); January 21, 2015 (R. at 274); March 13, 2015 (R. at 282); April 15, 2015 (R. at 289); and August 24, 2015 (R. at 296). Similarly, Dr. Sage's treatment records for the time period after Plaintiff's date last insured also document normal range of motion with no edema or tenderness on May 16, 2016 (R. at 438); January 27, 2017 (R. at 449); August 23, 2017 (R. at 461); November 13, 2017 (R. at 474); March 9, 2018 (R. at 483); April 24, 2019 (R. at 499); and May 13, 2019 (R. at 508).

For her part, Plaintiff cites to other record evidence she believes demonstrates the severity of her rheumatoid arthritis. To be sure, the symptoms highlighted by Plaintiff are reflected in Dr. Madan's office treatment records dated September 30, 2015. (R. at 779.) However, a review of those specific records reveals that Plaintiff's argument here relies on only a very limited picture of those records. That is, Plaintiff's select focus ignores additional findings during that same examination noting that Plaintiff reported "AM stiffness" lasting only "10 mins." (*Id.*) Further, other findings on that same date include that Plaintiff was ambulating normally, that her motor strength and tone were normal, that her hands and wrists exhibited decreased swelling, that she had no cyanosis or edema, that she had full range of motion in her wrists and elbow and no swelling in her ankles. (*Id.*) Additionally, these office treatment records also indicate that Plaintiff is taking Enbrel for her rheumatoid arthritis and that she denies having a major flareup. (R. at 778.) Thus, Plaintiff's argument, in essence, asks the Court to reweigh the evidence to conclude that her rheumatoid arthritis constituted a severe impairment. However, the Court will not reverse an ALJ's decision just because substantial evidence may have supported another finding. Instead, review is limited to whether the ALJ's decision was supported by substantial evidence. *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 440 (6th Cir. 2017)

Beyond this, to the extent Plaintiff suggests her hand tremors constituted a severe impairment, her argument is not well-developed on this point. Further, medical records from Dr. Sage dated March 13, 2015, indicate that Plaintiff saw a neurologist who recommended that she stop taking Abilify and the tremors stopped. (R. at 281.) Dr. Madan's progress notes dated

12

September 30, 2015, also indicate that Plaintiff's tremors were "under control." (R. at 779.) Finally, although Plaintiff claims that her credible testimony demonstrated pain and fatigue, she does not meaningfully challenge the ALJ's subjective symptoms analysis. Thus, any such arguments on these issues have been waived. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver); *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) ("[Issues] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). It is the job of the ALJ, and not the reviewing court, to evaluate the credibility of Plaintiff's subjective statements. *Foster v. Halter,* 279 F.3d 348, 353 (6th Cir. 2001) ("Our role is not to ... examine the credibility of the claimant's testimony.").

In sum, the ALJ properly evaluated Plaintiff's rheumatoid arthritis and determined it did not meet the relevant requirements. The ALJ applied the proper legal standards and reached a decision supported by substantial evidence in finding that Plaintiff's rheumatoid arthritis was a non-severe impairment. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. The ALJ discussed treatment notes indicating Plaintiff's diagnosis and limited instances of swelling and pain or morning stiffness. (R. at 21.) The ALJ also noted the records indicating more frequent instances where Plaintiff reported no pain or morning stiffness and no aches, pains, or joint swelling were documented. Moreover, substantial evidence supported this finding as detailed above. Accordingly, the ALJ's decision should be affirmed.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:    March 8, 2023                                /s/ *Elizabeth A. Preston Deavers*
                                                      Elizabeth A. Preston Deavers
                                                      United States Magistrate Judge